### H. S. Whitmore, Appellant, v. William Waters' Estate, Appellee.

#### Gen. No. 4,967.

INSTRUCTIONS—*when peremptory instruction should be given.* A peremptory instruction for the defendant is proper where there is no proof by which the jury can fix any amount of damages and the evidence is in such shape that a verdict, if in favor of the plaintiff, would have amounted to a mere guess.

Contested claim in court of probate. Appeal from the Circuit Court of Jo Daviess county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the April term, 1908. Affirmed. Opinion filed August 10, 1908.

HODSON & CAMPBELL and SHEEAN & SHEEAN, for appellant.

JONES & KERZ, for appellee.

MR. JUSTICE WILLIS. delivered the opinion of the court.

H. S. Whitmore, appellant, filed a claim against the estate of William Waters in the County Court of Jo Daviess county, to recover a share of the proceeds of two sales of certain mining leases and privileges made by William Waters, who died July 30, 1906. The widow of Waters was appointed executrix of his estate January 22, 1907. So far as appears, appellant had nothing to do with Waters' mining operations. Whitmore filed a claim for $4,160 against Waters' estate, showing a credit for $1,000 paid by Waters. On the hearing in the County Court, judgment was entered against the estate for $2,750. From this judgment, an appeal was taken to the Circuit Court of said county where a trial was had before a jury. At the close of claimant's evidence, appellee moved to dismiss the case for want of jurisdiction in the Circuit and County Courts, on the ground that the claim arose out of an unsettled partnership account. The court heard the argument of counsel and authorities cited, and after holding the motion under advisement for a day or two, held that the County and Circuit Courts had jurisdiction, and denied the motion. Appellant then made a motion for leave to withdraw a juror. The next day, appellant withdrew that motion. Appellee then moved the court to instruct the jury to find the issues for the defendant. Such an instruction was given, and a verdict for appellee returned. A motion for a new trial was denied, there was a judgment against appellant for costs, and this appeal is prosecuted by plaintiff below.

The evidence shows that Waters, the deceased, a lead miner in Galena, for a number of years had been mining certain lead veins on the property of a number of persons, under leases from the owners, and under certain streets under ordinances of the city. In 1902, he desired to secure a lease giving him authority to extend

the same veins through the lands of Mr. and Mrs. Reed and a Mrs. Klett. His purpose in securing the Reed and Klett lease seems to have been to aid him in selling his entire mining leases. He applied to Reed, who refused to lease to him. Waters then got appellant to go with him to Reed, and they together succeeded in procuring from Reed and his wife a lease to Waters and appellant, which Mrs. Klett, who owned land between the Reed farm and the west end of Waters' other leased lands, signed. On December 1, 1902, appellant assigned said lease to Waters. On December 12, 1902, Waters made a contract for the sale of all his mining property to one Chappell for $30,000 of which $7,500 was paid in cash. The contract provided for a forfeiture in case the deferred payments were not made. Waters then drew a check in favor of appellant for $500, and delivered it to appellant's wife in appellant's absence, saying there was more to come. The purchaser failed to complete the contract, and forfeited the $7,500. On May 11, 1903, the said leases, and others obtained by the purchase of December 12, 1902, were assigned to Waters, who, on June 16, 1906, made a contract for the sale of said leases to the Lake Superior Development Company, of Ironwood, Michigan, for $15,000 of which $5,000 was paid in cash. Waters delivered a check to appellant for $500 after the second sale. This sale was not completed, and the $5,000 was forfeited. About four years after the first sale, appellant filed this claim, for what he asserts is his share of the cash payments of $7,500 and $5,000.

It is assumed that the trial court held that the relation between appellant and Waters was that of partners, and that appellant could not recover in an action at law against the estate, but that he should have filed a bill in equity, and it is argued that the court should not have directed the jury to find for the estate. If that was the view of the court he should not have so directed the jury, but should have discharged them,

and proceeded to hear the case on equitable principles. As four days elapsed after the motion was made to dismiss the suit for want of jurisdiction before the court finally directed a verdict, appellant had ample time to ask that the jury be discharged if he so desired. He did ask leave to withdraw a juror and then withdrew that motion. He could not expect the court to determine for him what course he should pursue. As appellant persisted in having a jury, the directed verdict was right, unless the evidence tended to make a case for appellant. Regardless of whether the relations between the parties constituted a partnership as claimed by appellee, or not, as claimed by appellant, we are of the opinion that there was not sufficient evidence before the court to warrant the jury in finding a verdict for appellant. Appellant did have a lease, in company with Waters, of the Reed and Klett lands. He transferred his leasehold interest therein to Waters before Waters made the first sale. His motive in passing his interest over to Waters does not appear from the proof. For aught that appears in the record, he may have been paid the full value therefor, or he may have understood that his interest was to be but slight. When Waters made the first sale, and delivered to appellant's wife a check for $500 he said, there was "more to come." That may have meant, as appellant contends, that more of the $7,500 paid down was to be paid him, but it is equally consistent to infer from the language used, that there was more to come from the deferred payment of $22,500, if the purchaser decided to complete the transaction. If more of the cash payment of $7,500 was due appellant, it is strange that he made no effort to obtain it during the four years thereafter, that Waters lived. When Waters made the second sale he again delivered to appellant a check for $500.

There is no proof that appellant ever had any money in Waters' mining enterprise except that he furnished Waters a check for $80 to help pay for a test hole sunk

on the Reed and Klett land, which failed to develop mineral, and was abandoned. There is proof by several witnesses that Waters said appellant had an interest in the leases of the Reed and Klett lands, but absolutely nothing to show what that interest was. The proof shows that appellant worked a little on one of the test holes sunk on the Reed and Klett lands. However, none of the shafts or test holes sunk on the Reed and Klett lands showed any mineral.

There could be no verdict for appellant for any amount because there was no evidence showing the extent of his interest in the property, and for the further reason, that if appellant was in fact, owner, as he claimed, of a one-half interest in the Reed and Klett lands, the cash payments made on the two sales were on the whole of Waters' mining interest, including various veins under the lands of numerous other owners and under the streets of the city, and the evidence furnishes no basis or test by which the jury could decide what portion of the sum paid ought to be allowed for the portion covered by the Reed and Klett leases. Moreover, the proof does not show that there were any workable veins or ore of value under the Reed and Klett lands. Whether the veins Waters was working would run into the Reed and Klett lands and be of value, was uncertain and purely speculative. There was no intelligent measure of recovery placed before the jury, or in other words, there was no proof by which the jury could fix any amount of damages, and their verdict, if in favor of appellant, would have amounted to a guess.

The trial court committed no error in directing a verdict for appellee, and the judgment of the Circuit Court is affirmed.

*Affirmed.*